Durrell A. Puckett #G.05549
Name and Prisoner/Booking Number

CSP- SACRAMENTO
Place of Confinement

P.O. Box 29
Mailing Address

Represa, California 95671
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

FILED

JAN 21 2020

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
          DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

Durrell Anthony Puckett ,
(Full Name of Plaintiff)    Plaintiff,

v.

(1) Captain H. LIU ,
(Full Name of Defendant)

(2) CHIEF M. VOONG ,

(3) Warden David Baughmann ,

(4) LIEUTENANT GREG HAMPTON ,
Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. 2:19-CV-02437-CKD
(To be supplied by the Clerk)

FIRST AMENDED
**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

☑ Original Complaint
☑ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).
   ☐ Other: _____.

2. Institution/city where violation occurred: Ca STATE PRISON- SACRAMENTO .

## B. DEFENDANTS

1. Name of first Defendant: __H.LIN__ . The first Defendant is employed as:
__CAPTAIN__ at __cdcr main 3rd level appeal Branch.__
(Position and Title) (Institution)

2. Name of second Defendant: __M.VOONG__ . The second Defendant is employed as:
__CHIEF OF APPEALS__ at __cdcr Main 3rd Level Appeal Branch__
(Position and Title) (Institution)

3. Name of third Defendant: __DAVID BAUGHMAN__ . The third Defendant is employed as:
__WARDEN__ at __CSP - SACRAMENTO__ .
(Position and Title) (Institution)

4. Name of fourth Defendant: __GREG HAMPTON__ . The fourth Defendant is employed as:
__LIEUTENANT__ at __CSP - SACRAMENTO__ .
(Position and Title) (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner? ☒ Yes ☐ No

2. If yes, how many lawsuits have you filed? __3__ . Describe the previous lawsuits:

   a. First prior lawsuit:
   1. Parties: __PUCKETT__ v. __DEPUTY HENRY JAQUEZ et al,__
   2. Court and case number: __C.D. of Ca__ .
   3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) __TRIAL__
   _____ .

   b. Second prior lawsuit:
   1. Parties: __PUCKETT__ v. __N.K.S.P EMPLOYEES__
   2. Court and case number: __E.D. of Ca__ .
   3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) __dismissed__
   __Appealed 2009 9TH circuit/lost__ .

   c. Third prior lawsuit:
   1. Parties: __Puckett__ v. __J.Hall et al,__
   2. Court and case number: __E.D. of Ca__ .
   3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) __settlement__
   _____ .

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

| | | |
|---|---|---|
| 1. | 5. Sgt. CHRISTOPHER G. WALKER SR. | 17. ▓▓▓▓▓ HENDERSON |
| 2. | 6. OFFICER STEVEN M. BARTLETT | ▓▓▓▓▓ |
| 3. | 7. OFFICER DANIEL L. DILLON | 18. B. NICOLACE |
| 4. | 8. OFFICER MATTHEW J. KESELOFF | 19. ▓▓▓ JOHN DOE |
| 5. | 9. OFFICER STEPHEN C. LEATHERMAN | 20. A. HICKS |
| 6. | 10. OFFICER ROGER K. LYNCH | 21. ▓▓▓▓▓ MICHAEL WILLIA |
| 7. | 11. OFFICER CHARLES C. PIERCE | 22. SECRETARY OF CDCR |
| 8. | 12. OFFICER CAMERON P. REIF | 23. JOHN DOE |
| 9. | 13. OFFICER CHAD J. RICHARDS | 24. JOHN DOE |
| 10. | 14. OFFICER SHEARS, ▓▓▓▓▓▓▓ | 25. JANE DOE |
| 11. | 15. OFFICER CHAD P. SEELY | 26. FRANK BLACKSHER |
| 12. | 16. PSYCHIATRIC TECHNICIAN BLAKE O'CONNELL | |

B. Additional Defendant's

5. CHRISTOPHER G. WALKER SR., Sgt. AT CSP-SACRAMENTO

6. STEVEN M. BARTLETT, OFFICER AT CSP-SACRAMENTO

7. DANIEL L. DILLON, OFFICER AT CSP-SACRAMENTO

8. STEPHEN C. LEATHERMAN, OFFICER AT CSP-SACRAMENTO

9. ROGER K. LYNCH, OFFICER AT CSP-SACRAMENTO

10. CHARLES C. PIERCE, OFFICER AT CSP-SACRAMENTO

11. MATTHEW J. KESELOFF, OFFICER AT CSP-SACRAMENTO

12. CAMERON P. REIF, OFFICER AT CSP-SACRAMENTO

13. CHAD J. RICHARDS, OFFICER AT CSP-SACRAMENTO

14. SHEARS ▓▓▓▓▓▓, OFFICER AT CSP-SACRAMENTO

15. CHAD P. SEELY, OFFICER AT CSP-SACRAMENTO

16. BLAKE O'CONNELL, PSYCHIATRIC TECHNICIAN AT CSP-SACRAMENTO

17. HENDERSON ▓▓▓▓▓, SERGEANT AT CSP-SACRAMENTO.

-3-

## C. PREVIOUS LAWSUITS CONTINUE

PUCKETT V. T.W. STEADMAN — DISMISSED E.D. of Ca

PUCKETT V. R. ZAMORA — TRIAL E.D. of Ca

PUCKETT V. VOGEL (STATE) E.D. of Ca DISMISSED

PUCKETT V. BRANDON TRIAL E.D. of Ca

PUCKETT V. EZLERS — SETTLEMENT E.D. of Ca

PUCKETT V. BAZLEY — HECK BAR E.D. of CA

PUCKETT V. M.T.A AGBOLI et al, IN Progress

Puckett V. S. SWeis ~~in progress~~ RESOLVED
         Joint settlement

Puckett V. D. Houston                    BOLANOS et al in PROGRESS

Puckett V. McCarthy        Puckett V. J. Mack DISMISSED

Puckett V. Chrysler        Puckett V. B. GALINDO DISMISSED

Puckett V. Seely        E.D. of Ca

         23 TOTAL

B. Defendants — Continue —

~~~~ B. NICOLADLE REGISTER NURSE
18. ▮▮▮▮▮▮▮▮, ▮▮▮▮▮▮ AT CSP - SACRAMENTO
19. JOHN DOE SERGEANT
    ▮▮▮▮▮, ▮▮▮▮▮ AT CSP. SACRAMENTO
20. A. HECKS, OFFICER AT CSP. SACRAMENTO
    MICHAEL E. WILLIAMS
21. ▮▮▮▮ Control Tower officer 3.25.17, OFFICER AT CSP. Sacramento
22. JOHN OR JANE DOE, SECRETARY OF CDCR.
23. JOHN DOE, OFFICER AT CSP. SACRAMENTO
24. JOHN DOE, OFFICER AT CSP. SACRAMENTO
25. JANE DOE, OFFICER AT CSP. SACRAMENTO
26. FRANK BLACKSHER, PSYCHIATRIC TECHICIAN AT CSP - SACRAMENTO

# D. CAUSE OF ACTION

## CLAIM I

1. State the constitutional or other federal civil right that was violated: __Due Process__

2. **Claim I**. Identify the issue involved. Check **only one**. State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Disciplinary proceedings
   - ☐ Excessive force by an officer
   - ☐ Mail
   - ☐ Property
   - ☐ Threat to safety
   - ☐ Access to the court
   - ☐ Exercise of religion
   - ☒ Other: __Due Process__
   - ☐ Medical care
   - ☐ Retaliation

3. **Supporting Facts**. State as briefly as possible the FACTS supporting Claim I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

ON 2-26-18 I GOT MY 3RD LEVEL REVIEW IN MAIL - Captain H. LIU AND CHIEF M. VOONG IS CONDONING MISCONDUCT AS WELL AS KNEW SMITH WAS A ACTIVE MEMBER OF A SUIT OF MINES BEFORE SETTLEMENT. THEY KNEW PIERCE BEAT ME AND HAD TO GET PULLED OFF OF ME ALONG WITH WARDEN DAVID BAUGHMAN AND Lt. GREG HAMPTON BUT SAID THERE'S NO MISCONDUCT DONE ALTHOUGH THE NURSE AND SERGEANT WALKER WHO PULLED PIERCE OFF ME, SAID THERE WAS BEFORE. SGT. WALKER MINIMULIZED THE USE OF FORCE. BY LIU, WALKER, VOONG, BAUGHMAN ACTIONS I WAS DENIED DUE PROCESS TO HOLD ALL INDIVIDUALS ON 1.19.17 AND 3.25.17 ACCOUNTABLE AS WELL AS THE DIRECTOR ON 1.19.17 AND 3.25.17
THERE ACTIONS CAUSED ME TO BE EMOTIONALLY DESTURBED BY NOT PROPERLY OVERSEEING THESE ABOVE MATTERS, OR HAVE A NON-BIAS STAFF DO THE INVESTIGATIONS AS HAMPTON WAS THERE SO A COURSE HE'LL COVER UP MISCONDUCT, AND HAMPTON ADMITTED STAFF VIOLATED POLICY BUT FAILED TO DOCUMENT IT OR PROVIDE SUICIDE WATCH WITH SEELY, DILLON AND BARTLETT AN WHICH I SET MY CELL ON FIRE WHEN I WAS SUICIDAL. Sgt. Henderson on 3.25.17, w/ John Doe Sgt. who did Video Interview w/ that Nurse Niccacle Refuse Medical when I was choking from Smoke inhalation.

4. **Injury**. State how you were injured by the actions or inactions of the Defendant(s).

Beatin and emotional distress

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Claim I? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Claim I to the highest level? ☐ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

**CLAIM II**

1. State the constitutional or other federal civil right that was violated: _Cruel and Unusaul Punishment_

2. **Claim II.** Identify the issue involved. Check **only one.** State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☒ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

ON 1-19-17 AFTER A BEEING INCIDENT WHERE I SLIPPED IN GOTTEN BEATEN BY PIECE AND DILLON DUE TO I COULD NOT SEE. ONCE ON THE GROUND I WAS NON-RESISTANT C. PIECE AND D. DILLON STARTED RE-PUNCHING ME WHILE I WAS DEFENSELESS IN FULL RESTRAINTS. BARTLETT, KESELOFF, LEATHERMAN, LYNCH, REIF, O'CONNELL, CARUTHERS, RICHARDS, HAMPTON, SEELY AND (2) JOHN DOES, (3) JANE DOE SEEN THIS AND DONE NOTHING BUT CONDONE IT AND FALSEFY A FAKE REPORT. SGT. WALKER HAD TO PULL PIECE OFF OF ME AS HE WAS POUNDING ON ME. THAN WALKER TRIED TO COVER IT UP DUE TO I ASKED FOR A USE OF FORCE INTERVIEW THAN LIED SAYING HE DIDN'T KNOW IF I WAS RESISTING OR NOT. SEELY IS INVESTIGATOR SERVICE UNIT AND NOT ONLY CONDONED IT BUT SINCE THAT DAY I WAS GOING TO COURT FOR BATTERY ON STAFF W/ A WEAPON LIED IN A REPORT TO PUT ME ON RESTRICTIONS SAID I CLAIMED I AM GOING TO ASSAULT STAFF AND STAB THEM. WHILE IN CAGE BARTLETT AND REIF PEPPER SPRAYED ME FOR NO REASON BUT TO CAUSE HARM DUE TO I KEPT YELLING TO THE NURSE TO HELP. SEELY THREATENED TO GET ME STABBED AND KILLED. ALL THIS HAPPEN DUE TO I TRIED KILLING MYSELF

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

SWOLLEN EYE, BUSTED LIP, KNOTS AND BRUISES, PAIN TO BACK FOR OVER (4) MONTHS, HEADACHES, CONSTANT PARANOIA

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Claim II? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Claim II to the highest level? ☐ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

- 6 -

1. State the constitutional or other federal civil right that was violated: __Cruel and__
__Unusual Punishment__.

2. **Claim III.** Identify the issue involved. Check **only one**. State additional issues in separate claims.
   ☐ Basic necessities  ☐ Mail  ☐ Access to the court  ☐ Medical care
   ☐ Disciplinary proceedings  ☐ Property  ☐ Exercise of religion  ☐ Retaliation
   ☑ Excessive force by an officer  ☐ Threat to safety  ☐ Other: _____.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

ON 3.25-17 I WAS BEATEN ON THE GROUND BY C. PIERCE AND B. SMITH PUNCHED IN MY FACE, MY FACE SMASHED INTO THE GROUND, CONCRETE SLAB AS WELL, I WAS ORIGINALLY SLAMMED DOWN FOR NO REASON. THE JOHN DOE MICHAEL WILLIAMS CONTROL TOWER SEEN THIS WITH 4/0 TELLO, C/O A. HICKS, I WAS DRAGGED DENIED DINNER, NO STAFF MISCONDUCT WAS REPORTED, OR ALARM FOR ABOUT (3) WHOLE! MINUTES, Sgt. Henderson HEARD PIERCE SAY LET'S GET EM OUTSIDE AGAIN NO WITNESSES I WAS ALSO KICKED TWICE BY SMITH AND CALLED A RAPIST. HE TRIED TO ENDANGER ME DUE TO I WAS SUEING HIM. JohN DOE, Sgt WHO DID USE OF FORCE VIDEO OBSERVED SHEARS PUNCH ME TWICE ON GURNEY FOR BACK TALKING. BLACKSHER, pt. AN NICOLAOLE, RN SEEN THIS IN WOULD NOT PROVIDE MEDICAL AS MY NOSE FILLED MY SHIRT UP W/ BLOOD SPOTS TWO JohN DOE RESPONDERS STARTED YANKING ON CUFFS WHEN I WAS NON-RESISTANT TIGHTING THEM SWELLING HANDS/ANKLES THAN PUNCHING ME. BOTH SERGEANTS AND ALL OTHER MENTIONED WATCHED THIS GO ON FOR AT LEAST 30 UNBEARABLE SECONDS CAUSING A INTENSE PANIC ATTACK SCREAM SCARING ME AS THE UNLAWFUL BEATING WAS GOING ON I WAS TIED DOWN IN RESTRAINTS AND UNABLE TO PREVENT BLOWS AN THEY KEPT SAYING SUE THIS AH HA.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   KNOTS, BRUISES, CUT ANKLES, ELBO SCRAPED AND SWOLLEN, SWOLLEN EAR AND CHEEK, LEFT SHOULDER TOO.. BRUISES AND KNOTS ON FOREHEAD. SLOW BLOOD LEAK BY SHEARS.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☑ Yes  ☐ No
   b. Did you submit a request for administrative relief on Claim III?  ☑ Yes  ☐ No
   c. Did you appeal your request for relief on Claim III to the highest level?  ☐ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____.

**If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.**

**D. CAUSE OF ACTION**

**CLAIM III**

1. State the constitutional or other federal civil right that was violated: ___N/A___
   ___8th AMENDMENT___.

2. **Claim I**. Identify the issue involved. Check **only one**. State additional issues in separate claims.

   ☐ Basic necessities     ☐ Mail     ☐ Access to the court     ☐ Medical care

   ☐ Disciplinary proceedings     ☐ Property     ☐ Exercise of religion     ☑ Retaliation

   ☐ Excessive force by an officer     ☐ Threat to safety     ☐ Other: _____.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

ON 1-19-17 FOR BITING DILLON, DILLON AND PIERCE HIT ME MULTIPLE TIMES, HELD ME DOWN HITTING ME USING RACIAL SLURS THAN REIF AND BARTLETT SPRAYED ME FOR NO REASON, SAYING "DONT FUCK WITH OURS," THAN BECAUSE I WAS HAVING A ACTIVE LAWSUIT ON SMITH, AND WROTE UP PIERCE FOR THE 1-19-17 INCIDENT THESE TWO JUMPED ME AND PIERCE WAS NOT ASSIGNED TO MY TIER, IT WAS A CLEAR SET UP AS I CAME OUT SHOWER PIERCE IMMEDIATELY CAME INTO VIEW WITH A SMIRK IN THEY BOTH COMMENTED ABOUT MY LAWSUIT SECONDS BEFORE THE ASSAULT AND CONTINUED ON AFTER I SPIT ON SMITH IN WAS NONE RESISTANT. Sgt. HENDERSON, JOHN DOE Sgt., TOLD ME WITH SNEARS THAT I'M A SNITCH SO THEY'RE GOING TO CONDONE MY WELL DESERVED BLANKET PARTY.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

Bruises, knots, swelling to elbo and discolored area, swollen shoulder, cuts/bruises on ankles

5. **Administrative Remedies:**

   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your
      institution?     ☑ Yes    ☐ No

   b. Did you submit a request for administrative relief on Claim III?     ☑ Yes    ☐ No

   c. Did you appeal your request for relief on Claim I to the highest level?     ☐ Yes    ☐ No

   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you
      did not. _____

STATE CLAIM / FEDERAL CLAIM

**CLAIM II**

1. State the constitutional or other federal civil right that was violated: _____
   EQUAL PROTECTION CLAUSE .

2. **Claim II.** Identify the issue involved. Check **only one.** State additional issues in separate claims.
   - ☐ Basic necessities      ☐ Mail          ☐ Access to the court      ☐ Medical care
   - ☐ Disciplinary proceedings    ☐ Property      ☐ Exercise of religion     ☐ Retaliation
   - ☐ Excessive force by an officer   ☐ Threat to safety  ☒ Other: Failure to Supervise .

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

I WROTE THE SECRETARY PRIOR TO THE 1·19·17 ASSAULT PUTTING HIM/HER
ON NOTICE BY MAIL PUTTING ON LETTER TO: SECRETARY OF CDCR, THAT STAFF
IS THREATHING ME TO BEAT ME, GET ME RAPED AND KILLED, SOME STAFF
THREATENING TO GET ME TORCHED DUE TO THEY ALWAYS SAYING I AM
A CHILD MOLESTER DEFLAMING ME DUE TO THEY DONT LIKE ME AND
BECAUSE I AM A MENTAL HEALTH PATIENT ALWAYS TRYING TO GO TO
SUICIDE WATCH AND BECAUSE I WRITE MULTIPLE LAWSUITS & WRITS ON
CDCR BUT THE SECRETARY HAD ABOUS (40) FORTY DAYS TO HELP OR
HIS/HER MAIL OPENNER TO DO SO .
THAN ABOUT (12) TWELVE TIMES BETWEEN 12·1·16 - 3·10·17
I KEPT WRITING SAYING I FEAR FOR MY SAFETY ON RECIEVE
MY LIFE IS IN DANGER. I WROTE 602'S, INMATE REQUESTS
AND THE COLEMAN LAWYERS AS I AM A CLASS MEMBER BUT
SECRETARY DONE NOTHING. I SUFFERED PHYSICAL AND VERBAL
ABUSE FOR HIM/HER NOT PROPERLY OVERSEEING HIS/HER EMPLOYEES,
AND NOT TRAINING STAFF TO REPORT MISCONDUCT. I ALSO SUFFERED
MENTAL ANGUISH.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   Beatings, threats, emotional injury. _____

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Claim II? ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Claim II to the highest level? ☒ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

## E. REQUEST FOR RELIEF

State the relief you are seeking:

H. LIU, SECRETARY, M. VOONG, BAUGHMANN, HENDERSON, HAMPTON, JOHN DOE SGT, TO PAY $15,000.⁰⁰ PUNITIVE/$2,500.⁰⁰ INDIVIDUAL CAPACITY. KESELOFF, SHEARS, NICOLAOLE, SEELY, RICHARDS, WILLIAMS, O'CONNELL, F. BLACKSHER, HICKS, JANE DOE $35,000.⁰⁰ PUNITIVE/KESELOFF, WILLIAMS, SEELY $20,000.⁰⁰ INDIVIDUAL CAPACITY, NICOLAOLE, HICKS, SHEARS, RICHARDS, O'CONNELL, BLACKSHER $10,000⁰⁰ INDIVIDUAL CAPACITY. WALKER, PIERCE, BARTLETT, DILLON, REIF $75,000⁰⁰ PUNITIVE/30,000.⁰⁰ INDIVIDUAL CAPACITY. JOHN DIES $60,000.⁰⁰ BOTH CAPACITIES, A NEW USE OF FORCE REVIEW POLICY. LIE DETECTOR TESTS PROVIDED TO PRISONERS UNTIL THEY ABUSE IT BUT ONLY USED FOR SERIOUS ALLEGATIONS MAY RESULT IN STAFF TERMINATION OR CRIMINAL CHARGES.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___01/14/2020___
DATE

_____
SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.

# Declaration

- I Kordy Rice -V.43736 residing in CSP-SAC-Bravo-7-Cell 216 was at my door talking to my neighbor - B.7.215 waiting for AM pill call.
- Two officers were escorting inmate Puckett down the top teir stairs
- Puckett told the officers he couldn't see. He came to the second set of stairs and stumbled on the last steps.
- C/o Dillion got Puckett in a choke maneuvere with his right arm then slammed Puckett on the ground
- C/o Dillion then began to punch Puckett mutiple times on his face, neck, and his head
- A C/o by the name of Pierce jumped into the fray and punched Puckett as Puckett layed on the ground in hand and ankle cuff restraints. Pierce punched Puckett mutiple times in his ███ stomach and back.
- Puckett was then placed inside of a holding cage where he requested to speak to his doctor.
- C/o's Bartlett and Reif both emptied their pepper spray cans on him.
- The above mentioned events all occured in CSP-SAC-Bravo 7 -Bravo section dayroom on Jan. 19 2017

I swear under penalty of perjury all the above mentioned is true and correct

                                              Kordy Rice -V.43736

Date  1-19-2017

CSP - SAcramento
BRANdon Mefford v-12589  3-28-2017
My Statement

I witnessed %o smith go from down stairs
tier to escorte inmate puckett to the Shower
once in the Shower %o smith & Inmate
puckett got into A verbal argument and smith
Asked puckett do you want to Return to your
cell during the escorte %o pierce Came from
up A section door into B section the out
of no where C/o Smith Struck Inmate
puckett in the face and dumped him to
the ground and C/o smith continued to pund
punch him to the head and face
C/o peirce started kicking him and
Punching him as well he ended up
with his Inmate puckett ended up
with his head on A 150 pound concrete
Cinder Block C/o Smith placed his Boot
on Inmate puckett's face and used
extream force it looked Like
C/o Smith was trying to Break his
neck as the incident started to
wind down I heard C/o Smith

# <u>Declaration</u>

Date: Jan. 19. 2017

· On January 19th, 2017 I, Marquon Vasquez CDCR# AW-3113 was standing at my door (cell # 113/B-Section) and saw two C/O's escorting inmate Pucket CDCR# from the top tier to the bottom tier. Inmate Pucket was complaining to the officers about him not being able to see when he got to the second set of steps he tripped at the bottom.

· C/O Dillon then wrapped his right arm around inmate Puckett's neck and slammed him on the ground.

C/O Dillon started punching Puckett in his neck and the back of his head and the side of his face.

Another C/O by the name Pierce began punching inmate pucket in his back and ribs.

A third C/O by the name Bartlett joined in with the other two C/O's and began kicking Puckett while he lay on the ground defenseless in shackles and handcuffs.

Inmate Puckett was placed in a holding cage where he requested to see a Doctor.

C/O's Bartlett and Reif then both pulled out their pepper spray cans and then began hosing inmate Puckett down for over five seconds.

All above mentioned took place in Bravo Section Bravo 7 Building.

I swear under penalty of perjury the above information is true and correct.

x _Marqn Vasquez_ 1/19/17

DECLARATION                                    3·25·17
        ON MARCH 25ᵗʰ 2017 AT CSP- SACRAMENTO I
I/M MCGEE DECLARES AS FOLLOWS, I OVER HEARD
C/O PIERCE THREATEN I/P PUCKETT WITH C/O SMITH
THAN AWHILE LATER LIKE 5 MINUTES TO BE VERBATIM
C/O B·SMITH PULLED PUCKETT OUT OF THE SHOWER BY
HIS SELF AND SAY SUE THIS I THAN HEARD PUCKETT
SCREAMING STOP FUCKING HITTING ME I HEARD
C/O PIERCE YELLING HULD HIM DOWN SO I COULD
CHOKE HIS ASS OUT % SMITH IS BLACK AND C/O PIERCE
IS WHITE ~~THIS SITUATION~~ C/O SMITH WAS CALLING
PUCKETT A BITCH, COWARD, RAPIST ON THE TIER
BEING REAL UNPROFESSIONAL, THIS CONCLUDE MY
STATEMENT I, KENNETH SAVEON MCGEE DECLARE
UNDER PENALTY OF PERJURY THAT THE FOREGOING IS
TRUE AND CORRECT ON 3·25·17 IN REPRESA, CALIF.

                    Kenneth McGee
                            CDCR # F37050
            SIGNATURE OF DECLARANT



*Ex ( D.8 )*

**County of Sacramento**
*Office of the Public Defender*

**STEVEN M. GARRETT**
Public Defender

**Torr M. Zielenski**
Chief Assistant Public Defender

**Amanda Benson**
Chief Assistant Public Defender

**Débra A. McClure**
Bureau Chief of Investigations

Investigation Division

NEXT COURT DATE: MARCH 26, 2019
DEPARTMENT: 9

| | |
|---|---|
| **ATTORNEY:** | GREGORY FOSTER |
| **INVESTIGATOR:** | SCOTT DRAGESET |
| **DEFENDANT:** | DURRELL PUCKETT |
| **X-REF:** | 4930993 |
| **CASE:** | 17FE008128 |
| **DATE:** | MARCH 25, 2019 |
| **TIME:** | 10:40 AM |

| PC 1054.8 Requirements | |
|---|---|
| (Personal/Phone Interview) | (Initials) |
| I.D. Self | SRD |
| I.D. Agency | SRD |
| I.D. Client | SRD |
| (Personal Interview) | (Initials) |
| Provide Business Card | Initials |
| Show identification | SRD |

On March 22, 2019, at approximately 10:00 AM, I conducted an in-person interview with CDCR inmate **DAMIEN ROBERT McCARTNEY**, DOB: 5/24/74, CDCR #AH7928, inside the visitor center at California Health Care Facility (CHCF), physical address: 7707 Austin Road, Stockton, CA 95215. I identified myself to McCartney as an investigator with the Sacramento County Public Defender's Office, showed him my business identification and informed him that our office is providing criminal defense representation for Durrell Puckett in regards to a criminal court case stemming from an incident occurring inside California State Prison-Sacramento (CSP-Sacramento) at and near the left upper tier showers in B facility, 7 block, PSU, on March 25, 2017.

DURRELL PUCKETT McCartney Damien

Ex (D.9)

McCartney understood who I am and that our office is representing Puckett. McCartney agreed to speak with me and stated the following in summary in response to questions asked of him regarding Durrell Puckett and what took place on March 25, 2017:

I was at New Folsom (referring to CSP-Sacramento) from 2013 through 2017. I was in a cell that was four cells down from the showers and one cell down from the stairs at the time of the incident on March 25, 2017. I witnessed everything that happened that day because it all happened directly in front of my cell.

I know Puckett well. He is like a little brother to me. I'm like everyone's big brother. Puckett was in the DDP (Developmentally Disabled Program) and he was kept in a worse environment than most. He has cognitive problems and mild retardation. He was a crack baby. Puckett was like a baby if you treated him nice. The staff treated him like their little punching bag.

This all happened because the mental health staff and police all work together against the trouble makers put in the IEX unit (Indecent Exposure Unit). A lot of us in IEX were on restriction for years. We were not allowed to have property, a TV or food.

Puckett has three lawsuits against Officer Smith, who is a little Black guy with glasses. Smith loved to slam us when we were in handcuffs. Smith wasn't supposed to be around Puckett because of the lawsuits and he wasn't supposed to be assigned to our building that day. He came over just to do the showers.

Smith told all the police to leave and I watched him escort Puckett to the shower by himself. Protocol says there are supposed to be two officers doing the escort. I saw Officer Pierce waiting behind the adjoining door to the shower. Pierce is a big guy. He is about 6'5" tall and 280 pounds.

Smith left Puckett in the shower for 10 to 15 minutes. Puckett is yelling, "You can handcuff me!" I'm telling Puckett to calm down. Smith then comes up to Puckett and says, "Yeah, motherfucker. Stick your hands out!" Puckett backs up and he gets cuffed. Smith started talking shit to Puckett saying things like, "what you saying now!" Smith then swings Puckett around and bends him over the upper tier railing. Then Pierce comes over and clocks Puckett. Puckett goes to the floor and his face is on the concrete curb/bumper that about two feet in front of my cell. Smith had his foot on Puckett's neck. I told Smith to take his foot off or I'd come out and kill him. That's when all the inmates on the tier started throwing piss. I watched Smith give five blows to Puckett's face and I heard him say to Puckett, "Tell your lawyer that!"

Puckett had to stay on the floor for about 10 to 15 minutes because of all the piss.

I am willing to testify in court.

The interview was concluded at approximately 10:30 AM.

END OF REPORT

NOTE TO ATTORNEY:

Damien McCartney presented as a fairly credible witness. He spoke clearly and had logical thoughts. However, McCartney is a PSU inmate and has mental health issues. He claims to be a former Army Ranger who sustained severe trauma and paralysis from an explosion in Afghanistan (he is in a wheelchair).

I believe McCartney would have fair jury appeal and he would appear honest and truthful.

McCartney is serving a life sentence for a 2011 conviction in San Francisco County for kidnap/rape.



*Ex (E.1)*
**County of Sacramento**
***Office of the Public Defender***

**PAULINO G. DURÁN**
Public Defender

**Steven M. Garrett**
Chief Assistant Public Defender

**Torr Zielenski**
Chief Assistant Public Defender

**Débra A. McClure**
Bureau Chief

Investigation Division

**NEXT COURT DATE: FEBRUARY 26, 2018**
**DEPARTMENT: 9**

| | |
|---|---|
| **ATTORNEY:** | **AMANDA BENSON** |
| **INVESTIGATOR:** | **SCOTT DRAGESET** |
| **DEFENDANT:** | **DURRELL PUCKETT** |
| **X-REF:** | **4930993** |
| **CASE:** | **17FE008128** |
| **DATE:** | **FEBRUARY 23, 2018** |
| **TIME:** | **2:45 PM** |

| PC 1054.8 Requirements | |
|---|---|
| (Personal/Phone Interview) | (Initials) |
| I.D. Self | SRD |
| I.D. Agency | SRD |
| I.D. Client | SRD |
| (Personal Interview) | (Initials) |
| Provide Business Card | Initials |
| Show identification | SRD |

On February 22, 2018, at approximately 9:00 AM, I conducted an in-person interview with inmate **KENNETH DAVEON McGEE,** ███████████████ at a non-contact visitation booth inside the A-Facility visitor center at California State Prison, Sacramento (CSP-SAC), physical address: 100 Prison Road, Represa, CA 95671. Before questioning McGee, I identified myself as an investigator with the Sacramento County Public Defender's Office, showed him my business identification and informed him that our office represents Durrell Puckett in regards to a criminal court case stemming from an incident occurring at CSP-Sacramento on March 25, 2017, involving correctional officers Charles Pierce and Benjamin Smith.

McGee told me he recalled the being a witness to the incident. He agreed to speak to me and stated the following in summary in response to questions asked of him regarding what he saw and heard take place on March 25, 2017:

I have been here at CSP-Sacramento since early 2017. I came from CMF in Vacaville.

I knew Puckett for a couple of years while we were at Corcoran State Prison.

I've had no dealings with Pierce or Smith. I only saw Smith a couple of times. When I went to PSU I was told by inmates to be careful of Pierce because he was known to hit inmates while they were cuffed.

I remember what happened to Puckett back in March 2017. I was housed in B-Facility, 7-Block. The incident happened during showers. My cell was a couple of cells away from the showers. I think I was in cell 219 or 220. I heard C/O Smith on the tier doing showers. He was asking if anyone wanted to go to the shower. I heard Smith and Pierce at Puckett's cell. Puckett said he wanted to come out for a shower, but he didn't want Smith or Pierce to be the ones to cuff him. He wanted another officer to do it because he's had issues with them before. Both officers asked Puckett if he was refusing and Puckett said, no. He told Smith and Pierce that he just wanted different officers. The two officers then started calling Puckett a rapist, pervert, punk and bitches. They were telling everyone on the tier Puckett was in for rape.

$Ex(E.3)$

After three or four minutes, Puckett agreed to cuff up and went to the shower. I heard the shower turn on for about five seconds and then it turned off. The officers were still calling Puckett a little punk. Puckett said, "Whatever. Fuck you." That's when the officers told Puckett his time was up and that he was refusing to shower. I heard Puckett get cuffed up again and then I heard the sound of a body being slammed onto the ground. I heard Puckett say, "What the fuck!" Puckett then began screaming, "Aaaaaaaaa!" The Hispanic inmates nearby on the tier began saying, "Get the fuck off of him!" while they were kicking their doors and slots.

A few other officers showed up. The incident at the shower lasted only a couple of minutes. I recall hearing Pierce say, "Say he hit you." When the Black lady sergeant showed up she told Smith and Pierce to get away from the incident. They didn't listen to her. I was able to look out of my tray slot and saw C/O Pierce kneeing Puckett in the head and back area while he was on the ground.

I did write and sign a declaration right after the incident. I do remember C/O Smith saying something like, "Sue this." I also remember hearing that Smith had previous dealings with Puckett and maybe there was a lawsuit involved.

I am willing to testify in court.

The interview was concluded at approximately 10:15 AM.

END OF REPORT



*Ex (D.4)*

**County of Sacramento**
*Office of the Public Defender*

**Investigation Division**

**PAULINO G. DURÁN**
Public Defender

**Steven M. Garrett**
Chief Assistant Public Defender

**Torr Zielenski**
Chief Assistant Public Defender

**Débra A. McClure**
Bureau Chief

**NEXT COURT DATE: MAY 8, 2018**
**DEPARTMENT: 9**

| ATTORNEY: | AMANDA BENSON |
| --- | --- |
| INVESTIGATOR: | SCOTT DRAGESET |
| DEFENDANT: | DURRELL PUCKETT |
| X-REF: | 4930993 |
| CASE: | 17FE008128 |
| DATE: | APRIL 6, 2018 |
| TIME: | 11:46 AM |

| PC 1054.8 Requirements | |
| --- | --- |
| (Personal/Phone Interview) | (Initials) |
| I.D. Self | SRD |
| I.D. Agency | SRD |
| I.D. Client | SRD |
| (Personal Interview) | (Initials) |
| Provide Business Card | |
| Show identification | SRD |

On April 5, 2018, at approximately 8:55 AM, I conducted an in-person interview with **BRANDON LEIGH MEFFORD**, DOB:     CDCR     , at a non-contact interview booth inside the A-Facility Visitor Center at California State Prison, Sacramento (CSP-SAC), physical address: 100 Prison Road, Represa, CA 95671. Before questioning Mefford, I identified myself as an investigator with the Sacramento County Public Defender's Office, showed him my business identification and informed him that our office represents an inmate at CSP-SAC named Durrell Puckett in regards to a criminal court case stemming from an incident occurring at CSP-SAC on March 25, 2017.

*Ex (0,5)*

Mefford agreed to speak with me and stated the following in summary in response to questions asked of him regarding what he saw and heard take place on March 25, 2017:

I had been housed at Sac (CSP-SAC) for about 4 years when the incident happened with Puckett and the correctional officers.

Puckett and I were good friends. I had known him for a year or two at the time. We had been housed in the same buildings and same yards. He wasn't into all the bullshit. He was a good guy.

The incident with Puckett happened about 1 year ago. We were housed in B7 C-Section. I was in 213 and I believe Puckett was in 215. The cop named Smith, who wasn't supposed to be around Puckett, was antagonizing Puckett at his cell door about going to the shower. Puckett agreed to go to the shower and Smith cuffed him up and escorted him to the shower. I didn't notice any issues between Smith and Puckett while he was being escorted. They made it all the way down to the shower, which was quite far away from my cell. I couldn't hear anything they were saying because the fans were on and they were far away from me.

About one and a half to two minutes later, I could tell Smith said something to Puckett and they were going back and forth with each other. Puckett was in the shower, but I don't know if he was still cuffed or not.

While Smith was standing at the shower, I saw him looking down the tier at the door that goes from A-Section to B-Section. He looked that direction for about 5 to 10 seconds and then I saw the cop named Pierce come out of nowhere. I saw him walk up the stairs to the upper tier and go from upper A-Section to upper B-Section. I thought to myself, what is he doing there? Pierce was under investigation for beating inmates while handcuffed and he was removed from working in PSU.

I saw Pierce go straight to the shower where Smith was. One of them had to open the shower door and let Puckett out. I couldn't really see well, but I was able to see their reflection in the tower glass. Pierce and Smith began escorting Puckett back to his cell and when they got within five to ten feet of my door they dumped Puckett onto the ground by putting a leg in front of him and swiping his feet out. Pierce and Smith did it together as a team. It really seemed to me to be premeditated.

Puckett's face and head hit a concrete block in front of my cell that was along the edge of the tier. It's like one of those concrete parking lot blocks. It probably weighs about 150 pounds. Smith then got on top of Puckett and began punching him in the face. Pierce was punching Puckett in his side and was also kneeing and kicking Puckett. Smith then put his foot on Puckett's head and grabbed a bar on the railing for leverage. I thought he was going to break Puckett's neck from pushing so hard.

I began filing up cups of water and throwing them at Smith and Pierce to get them to stop assaulting Puckett. Other CO's started running up the stairs and I started throwing

water at them as well. They all had to go all the way around to the other side to get up to them.

I watched Smith lean into Puckett and I heard him call Puckett a punk or bitch and say something like, "You want to file a lawsuit? File a suit against this." It was something along those lines.

I don't recall hearing Puckett say anything during all of this, which lasted no more than 30 to 45 seconds. I believe he was laughing. I think he may have said something like you can't hurt me.

*At this point in the interview I showed Mefford a copy of a two-page, handwritten statement dated March 28, 2017, signed, "Brandon Mefford." Mefford immediately told me he recognized his writing and signature and that he wrote the statement. I had Mefford read the statement and indicate whether or not it was accurate. Mefford stated the following in summary:*

Yeah, that looks right. I wrote that right after this happened.

The interview was concluded at approximately 9:20 AM.

END OF REPORT