UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DURRELL ANTHONY PUCKETT,<br><br>   Plaintiff,<br><br>   v.<br><br>H. LIU, et al.,<br><br>   Defendants. | No. 2:19-cv-2437 TLN CKD P<br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights arising under 42 U.S.C. § 1983. On May 3, 2021, plaintiff filed a third amended complaint after being given leave to do so on April 15, 2021. The third amended complaint is submitted to the court for screening pursuant to 28 U.S.C. § 1915A(a).

On May 28, 2021, Deputy Attorney General Virginia Papan, acting as co-counsel for 10 defendants identified in the third amended complaint, took plaintiff's deposition.[1] Counsel Papan, on behalf of those defendants, now moves to dismiss, or alternatively for monetary sanctions, based upon plaintiff's behavior at his deposition.

/////

---

[1] Given the rules concerning the screening of prisoner § 1983 complaints, there were no claims pending at the time counsel deposed plaintiff. Still, it does appear deposing plaintiff was permissible under the Federal Rules of Civil Procedure.

1

I. <u>Sur-Reply</u>

Plaintiff has filed a request that he be permitted to submit a sur-reply with respect to defendants' motion. Local Rule 230(l) permits the filing of an opposition to a motion and then a reply. There is no provision for filing of a sur-reply and plaintiff does not point to good cause for deviating from that rule here. Plaintiff's request to file a sur-reply will be denied and his sur-reply will be stricken.

II. <u>Deposition</u>

Plaintiff was deposed by Counsel Papan via Zoom on May 28, 2021. During the deposition, plaintiff was by himself in in a cage used for visits. Defendants have lodged a copy of the transcript of the deposition along with a video recording. At the beginning of the deposition, plaintiff indicated it was approximately the eighth time he had been deposed, RT at 9, and that this case is approximately his 23rd civil action as a plaintiff. <u>Id</u>. at 14.

Plaintiff indicated that he is diabetic requiring insulin shots and that he takes psychotropic medications. Plaintiff did not take his insulin or his psychotropic medications before the deposition because of logistical issues at the prison. Plaintiff indicated that he was fine to proceed with the deposition, however. RT at 12-13. Later in the deposition, plaintiff indicated that he was housed in the Psychiatric Service Unit at his prison. RT at 44.

The deposition was unremarkable until about the 2:07 mark. At that point, plaintiff initially became defensive as to Counsel Papan's questioning regarding inconsistencies. RT at 107. Thereafter, however, plaintiff's behavior took an extreme turn for the worse:

A. I know, but you're trying to make it seem like I'm lying and --

Q. No I'm --

A. -- why the fuck would I lie about these bitch ass COs beating me up calling niggers and shit --

Q. Hold on.

A. -- every fucking day. I ain't got shit to stay to you. Fuck your deposition. You can tell your bitch-ass judge I'm refusing to do the deposition cause now you're fucking with me.

RT at 107.

1   At this point, plaintiff lay down on the ground out of view of the video camera. As the
2   following reveals, plaintiff did not want to continue the deposition, despite Counsel Papan's
3   efforts:
4   Q. No. Wait a minute. Mr. Puckett, I just -- hold on.
5   Mr. Puckett. Mr. Puckett. I just said that Mr. Walker had testified to that.
6   I am not calling you a liar, I promise you. I'm just here –
7   A. I ain't nothing to talk about. Say to the judge that I refuse to participate and I object
8   to all your questions now cause you're making me very angry and fucking with my mental health
9   cause I didn't have my meds today. I'm feeling agitated.
10   I don't want to talk to you no more. You're being a racist. You're being biased.
11   Q. All right. I don't want to be any of those things.
12   A. Have a nice day. We have nothing to talk about. Take it to the judge, show him the
13   video.
14   I object to everything. I didn't take my psych meds. I'm going crazy. Leave me alone.
15   Q. Okay. Mr. Puckett, I don't want to upset you. I don't -- that's not what I'm trying to
16   do.
17   Can we give you some time here?
18   A. No. I'm all right. You guys have a nice day.
19   Q. Well I'm hoping that you can have a little time because I just want to know what
20   happened that day.
21   RT at 107-109.
22   At this point, plaintiff got up and tried to get the attention of a correctional officer to take
23   plaintiff back to his cell. One of the things he did to get attention was to violently kick, multiple
24   times, a metal screen acting as a barrier in the cage where plaintiff was sitting.
25   A. That's all right. You have a nice day. Do your job.
26   Tell the judge that I refused to do the rest of the hearing. Hey, come get me out of here,
27   man. Hey come do your job and stop hiding somewhere and get me out of here.
28   RT at 109.

1     From this point on plaintiff's demeanor turned from uncooperative to threatening:

2     Q. All right, Mr. Puckett.

3     A. Shut up, bitch.  Stupid ass cracker.

4     All right.  Take me out.  I'm done.

5     CORRECTIONAL OFFICER:  (Inaudible)

6     THE WITNESS:  Yeah, I'm in 1 Block.

7     CORRECTIONAL OFFICER:  Yeah, I'll call them right now.

8     Oh, she's still on.

9     THE WITNESS:  Fuck that bitch.

10     MS. PAPAN:  Okay.  Mr. -- officer --

11     BY MS. PAPAN:

12     Q. Mr. Puckett, just for the record, you're refusing to proceed at this time; is that correct?

13     A. Yeah, bitch, cause your fucking calling me a liar and you're agitating me and I didn't take my psych meds, bitch.  Fuck you.  Fuck your dead ass family, bitch.  I hope you get raped and killed you stupid ass cracker.

16     MS. PAPAN:  Okay Mr. --

17     THE WITNESS:  Shut up, bitch.

18     MS. PAPAN:  -- Puckett --

19     THE WITNESS:  Shut up, bitch.

20     MS. PAPAN:  -- you're threatening --

21     THE WITNESS:  Shut up, bitch. Shut up, bitch.

22     MS. PAPAN:  Okay.

23     THE WITNESS:  Bitch, bitch, bitch.  Cracker, cracker, cracker.  Yeah, bitch, that's why I'm suing them now, and on the dead homies, I'm gonna stab the shit out of Bartlett when I catch him since he got dismissed bitch.[2]  Better go read my C-file.  I will stab a CO you stupid ass bitch. Stupid ass cracker.

---

[2] Officer Bartlett has not been dismissed from this case and is a defendant identified in plaintiff's third amended complaint.

4

1      CORRECTIONAL OFFICER:  All right.  Ma'am, are we done?

2      THE WITNESS:  Oh, we're done.

3      MS. PAPAN:  Mr. Puckett's refusing to continue.

4      CORRECTIONAL OFFICER:  Okay.

5      MS. PAPAN:  So for the record here before we stop this, Mr. Puckett, we will try to
6 proceed with this at another time, and we are hopefully going to be able to continue this, and you
7 have an opportunity to understand I did not call you a liar, and we just want to hear, and we're
8 entitled to hear, your version of the facts as they relate to this case.  That's all we're trying to do,
9 and I hope that, again, we will try to go to the court and try to continue this matter, and please
10 note that if you refuse to allow discovery on both sides we can move to dismiss this case, and I
11 don't think you want that.

12      THE WITNESS:  Do what you gotta do.  I don't care.  Fuck this case, but I guarantee
13 while I'm in this prison, any of your defendants come around me, I'm stabbing them.  You can
14 have it on report.  I don't care.  I'm doing over 100 years to life.  Paybacks a bitch, bitch.  Nobody
15 beats me up and gets away with it.

16      MS. PAPAN:  So, Mr. Puckett, and we do understand you did not receive your medication
17 today, so we hope that, like I said, we can continue this at a future date and we will seek leave of
18 court to do that and we'll try to make sure you get your medication at that point in time.

19      All right.  Do you have any questions before we go off the record, Mr. Puckett?

20      THE WITNESS:  What's wrong with this bitch.  She's weird, huh.

21      CORRECTIONAL OFFICER:  Ma'am, I think he's done at this point.

22 III. <u>Post-Deposition</u>

23      Defendants provide the declaration of Correctional Sgt. K. Boyd.  ECF No. 43-7.  Sgt.
24 Boyd indicates that she was part of a team of three officers who escorted plaintiff back to the
25 Psychiatric Service Unit after his deposition.  Hand and leg restraints were applied to plaintiff for
26 the escort.

27      Prior to arrival at plaintiff's cell, plaintiff and his escorts stopped at the nurse's station
28 located at the entrance of plaintiff's housing unit. While there, plaintiff was asked by a nurse if he

5

had taken his morning medications and plaintiff indicated that he had. The nurse then tested for plaintiff's blood sugar level. Once plaintiff was back in his cell, medical staff brought plaintiff diabetic crackers.

According to Boyd, plaintiff was "very talkative with the officers during his escort:"

> [Plaintiff] seemed fine and he was not angry or agitated; he was joking and casually talking to the escorting officers.
>
> At no time during the escort did plaintiff mention anything about a deposition, feeling angry, agitated, or needing any type of medications.

IV. Declaration of Dr. Bhullar

Defendants provide the declaration of Dr. Sarbjit Bhulla, MD, a staff psychiatrist at CSP-Sac. ECF 43-9. Dr. Bhullar indicates as follows:

1. Dr. Bhullar provided mental health treatment to plaintiff three times between April 5 and May 25, 2021. He also reviewed plaintiff's medical records on June 8, 2021.

2. At the time of plaintiff's deposition, plaintiff was involuntarily administered antipsychotic medication. Between April 5 and May 28, 2021 plaintiff's medications included:

    A. 100 milligrams of Haloperidol long-acting injection Haldol Deconoate, which plaintiff received on May 27, 2021 (the day before the deposition). The effect of this lasts four weeks and is used to treat mental and mood disorders by helping the patient to think more clearly, feel less nervous and take part in everyday life. It also reduces aggression and the desire to hurt others.

    B. Benztropine which is used to treat symptoms of involuntary movements due to the side effects of certain psychiatric drugs such as Haloperidol. It is also used to treat agitation, anxiety, and aggression.

    C. Vastaril which is used to treat symptoms of anxiety.

    D. Valproic Acid which is used to treat bipolar disorder.

    E. Citalopram which is used to treat depression by improving energy level and feelings of well-being.

/////

   3. The night before plaintiff's deposition, plaintiff took the Benztropine, Vastaril and Valproic Acid. On the morning of the deposition, plaintiff missed doses of Benztropine, Valproic Acid and Citalopram.

   4. Missing the morning doses of Benztropine, Citalopram, and Valproic Acid would not excuse or justify plaintiff's outbursts, swearing, or threats occurring at his deposition. Plaintiff's actions reflect his low tolerance to frustration, his aggression, and impulsivity.

   5. In Dr. Bhullar's professional opinion, plaintiff's actions at the deposition were purposeful, without remorse, and lack of empathy.

## V. History of Violent Behavior

   Plaintiff's history of violent behavior in and out of prison is extensive. At his deposition, plaintiff indicated that as a juvenile he had been convicted of assault, that he stands convicted of murder, and that he previously served time in prison for attempted murder. RT at 10-11. Also, evidence before the court indicates that in 2018 and while in prison on the current murder conviction, plaintiff pled guilty to aggravated mayhem as a result of his initiating a physical altercation with security officers in a court proceeding and ultimately biting off the tip of one of the officer's fingers. ECF No. 43-8.

   Over the course of approximately the last six years, plaintiff has been found guilty of prisoner disciplinary proceedings an astounding 64 times. ECF No. 43-6. Of those, plaintiff has been found guilty of assault or battery 34 times with 27 of those being battery on a peace officer. Id. In his opposition, plaintiff indicates that, on several occasions, plaintiff has been found either incompetent to stand trial or not guilty by reason of insanity with respect to several criminal charges involving violence directed peace officers.

## VI. Plaintiff's Explanation for Behavior

   In his opposition to defendants' motion to dismiss, plaintiff indicates that his behavior was the result of mental illness which plaintiff has had since age 7 and for which plaintiff has been taking psychotropic medication since 2011. Plaintiff asserts that as a result of his illness he gets tunnel vision and throws tantrums.

/////

Plaintiff admitted that he was out of line during the deposition and offered his "sincerest apology." Plaintiff suggests that his behavior was more the result of being "triggered" than because he had not had his medication that day, and that once "triggered" he cannot control himself.

Plaintiff did not rebut Sgt. Boyd's assertions concerning plaintiff's condition during the escort back to his cell, nor Dr. Bhullar's as to whether plaintiff's behavior was a result of plaintiff not receiving his prescribed psychotropic medication on the day of the deposition.

As for the ability to pay monetary sanctions for his behavior, plaintiff asserts he is set to receive $4,000 as part of a settlement agreement for a different action. It is not clear whether plaintiff has received those funds or whether they are still available to plaintiff.

Finally, plaintiff asserts that in spite of the threats he made at his deposition to correctional officers, he has not attacked any and does not plan to do so.

VII. Law and Analysis

In determining whether to dismiss a case based upon plaintiff's actions, the Ninth Circuit has found that the court must consider: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on the merits; and (5) the availability of less drastic sanctions. Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986).

Here, factors (1) and (2) weight in favor of dismissal because of plaintiff's refusal to complete his deposition and the resulting motion to dismiss which was filed was a direct result of plaintiff's behavior. Plaintiff's causing delay in this manner is somewhat mitigated by his mental illness, but more so by circumstances such as Covid-19 and high caseloads which are causing delay in § 1983 cases brought in this district anyway.

The risk of prejudice to defendants weighs in favor of dismissal as well, as defendants are entitled under the Federal Rules of Civil Procedure to depose plaintiff in defense of any claims against them. As with factors (1) and (2), factor (3) does not "tip the scales" to a large degree as it is possible that plaintiff could complete his deposition if the court so ordered.

Factor (4), generally speaking, always weighs in favor of plaintiffs, but is not sufficient

enough here to overcome the other factors, particularly especially factor (5).

With respect to factor (5) the court makes clear at the outset why sanctioning is necessary. First, Counsel Papan's questioning, by itself, did not give plaintiff cause to terminate the deposition. Second, it is clear plaintiff suffers from mental illness and that is certainly a mitigating factor, but nothing before the court suggests that plaintiff's mental illness rendered his extreme behavior at his deposition involuntary or uncontrollable. The court comes to this conclusion based upon: (1) plaintiff's demeanor and level of clarity after the deposition; (2) plaintiff's assertion in his opposition that he stopped answering questions because he was "triggered" and not because he missed a dose of certain medications; (3) and the declaration of Dr. Bhullar as to the probable effects of plaintiff missing one dose of certain medications. Third, it is clear that plaintiff understood that there could be consequences for his early termination of the deposition when he said "[f]uck this case" after being warned by Counsel Papan that the failure to participate in discovery could result in a motion to dismiss.

As for the appropriate sanction, the court recently obtained a copy of plaintiff's prisoner trust account statement (ECF No. 49) which reveals that plaintiff did receive the $4,000 payment mentioned above, but at this point, plaintiff has less than $300. That amount is not sufficient to cover any meaningful award of sanctions even if the court could arrive at such an amount.

At this stage, an appropriate evidentiary sanction, assuming there might be one, is not even conceivable because this case is not past the pleading stage.

The court finds that the only appropriate sanction is dismissal. The primary reason is the threat made by plaintiff to stab defendants and in particular defendant Bartlett. It is not clear that all of the defendants still worked in the prison where plaintiff is housed when he made his threat, but at least some of them did.[3] Therefore, it is at least possible that plaintiff could make good on his threat to some degree. Given plaintiff's violent history and lengthy term of imprisonment, it is also more than just possible that he meant the threats. Considering the

/////

---

[3] In his opposition, ECF No. 46, plaintiff indicates that he has come into contact with defendants Walker and Bartlett since his deposition.

threats made by plaintiff in context, dismissal is warranted if for no other the reason than to deter plaintiff from making similar threats in the future.

As mentioned above, plaintiff's termination of the deposition by itself is worthy of sanction as are death threats made against Counsel Papan's family and plaintiff's extremely disrespectful behavior toward Counsel Papan. All appropriate matters considered, dismissal is an appropriate outcome and a measured response to plaintiff's outrageous behavior at his deposition, even if the behavior is mitigated by plaintiff's mental illness.

VIII. Conclusion

For all of the foregoing reasons, the court will recommend that defendants' motion to dismiss be granted and that this action be dismissed with prejudice.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to file a sur-reply with respect to defendants' motion to dismiss (ECF No. 48) is denied.

2. Plaintiff's sur-reply is stricken.

IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (ECF No. 43) be granted; and

2. This case be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 18, 2022

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
puck2437.frs(2)